

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2009

# USA v. Lawrence

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2526

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Lawrence" (2009). *2009 Decisions.* Paper 1249.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1249

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2526

UNITED STATES OF AMERICA

v.

RONALD LAWRENCE
a/k/a ANDRA SMITH
a/k/a ANTHONY LAWRENCE

Ronald Lawrence,
Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 2-07-cr-00763-001)
District Judge:  Hon. Stewart Dalzell

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 2009

BEFORE:  RENDELL, STAPLETON and ALARCON,*
*Circuit Judges*

(Opinion Filed: June 2, 2009)

* Hon. Arthur L. Alarcon, Senior United States Circuit Judge for the Ninth Circuit, sitting
by designation

STAPLETON, Circuit Judge:

Appellant Ronald Lawrence pled guilty to possession of a firearm by a convicted felon.  In doing so, he reserved his right to challenge the District Court's denial of his suppression motion on appeal.  The sole issue before us is whether that denial was reversible error.  We will affirm.

At approximately 9:30 p.m. one evening, two members of Philadelphia's Narcotics Enforcement Team, while in their police car, received a radio message that an anonymous caller had reported that four black males were carrying guns and selling drugs in front of 1119 Montrose Street.  Prior to that evening, the police had received numerous complaints about illegal drug sales on the 1100 block of Montrose Street although no arrests had been made.

The officers drove to the 1100 block of Montrose Street arriving within twenty seconds of the radio message and saw four black men standing in close proximity to one another around a car parked in front of No. 1119.  There was no one else on the street in that block.  As the officers drove up to the men, one of them, Jack Harris, who had been standing next to Lawrence, pulled a handgun from his waistband and threw it inside the adjacent car.

The officers ordered Lawrence and the other men to the ground.  All but Harris complied.  Harris was ultimately subdued.  One of the officers, Officer Burgoon, frisked

the back of Lawrence's body and legs while he was still on the ground. He then brought Lawrence to his feet and frisked the front of his body. A handgun was found in Lawrence's waistband.

At the evidentiary hearing on Lawrence's motion to suppress the gun, Officer Burgoon testified that when a group of individuals engages in selling drugs, it is common for there to be a division of responsibility with certain individuals delivering the drugs, certain individuals holding the money, and certain individuals who carry a gun. He reported that "if there is one gun, there is usually two guns." App. at 62.

After finding the above recited facts, the District Court denied Lawrence's motion to suppress.

> The Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 31 (1968), held as follows:
> We . . . hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

Lawrence insists (1) that the tip, being an anonymous one, did not provide the "reasonable suspicion" required to make a *Terry* stop of the four men at 1119 Montrose Street, and (2) that even if there had been the "reasonable suspicion" required to make a *Terry* stop, there was no "reasonable suspicion" to support a *Terry* frisk of Lawrence.

Like the District Court, we are unpersuaded.

The citizen's report, while anonymous, was sufficiently corroborated by the police officers' personal observations to provide reasonable suspicion for the stop. When the officers arrived on the scene, they not only observed four black males in the precise location indicated by the caller, they observed that one of them was carrying a gun as predicted and was making an effort to conceal it as they approached.

Contrary to Lawrence's suggestion, the frisk of his clothing was based on more than his proximity to Harris when the police arrived. Harris' possession of a gun corroborated the tip that four black men were carrying drugs and guns at 1119 Montrose Street. That information, when viewed in the context of the numerous other prior complaints and the officers' experience with drug trafficking, understandably gave them reasonable concern about the existence of more than one gun. As the District Court observed:

> [T]he admittedly anonymous tip was, I wrote it down because it is important, quote – Four black males carrying guns, plural, selling drugs at 1119 Montrose Street. Of course, the guns trigger the whole Hensley line of cases about officers need to protect themselves, particularly when they confirm the fact that lo and behold they are right, in their line of sight was this gun that was put into the Chrysler.
>
> So since the tip was corroborated in several ways, four men, 1119 Montrose Street, gun. But, so whoever made that tip, admittedly anonymous, was not hallucinating because they had confirmed three truly critical aspects of it, the most critical which is the sight of the gun.
>
> So the fact that as Officer Burgoon testified, the four men were all in front of 1119, they were within just a few feet of each other near that Chrysler. Since the report was four black males with guns, plural, it seems

4

to me their safety obliges them to check the others for those guns for their own safety, doesn't it?

Wouldn't they have been stupid in the extreme not to check for guns, having seen one in their very eyes?

App. at 83-84.

The judgment of the District Court will be affirmed.